IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KRISHNENDU DASGUPTA § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CASE NO. 4:23cv838 |
| § | |
| BECKETT COLLECTIBLES, LLC § | |
| § | |
| *Defendant*. § | |
| § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL
COMPLAINT AND BRIEF IN SUPPORT**

**KILGORE & KILGORE, PLLC**

**W. D. Masterson
SBN NO.: 13184000
wdm@kilgorelaw.com**

**3141 Hood Street, Suite 500
Dallas, Texas 75219
214/969-9099 - Telephone
214/953-0133 - Fax**

**ATTORNEYS FOR PLAINTIFF
KRISHNENDU DASGUPTA**

## **TABLE OF CONTENTS**

                                                              **PAGE**

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................. iii

I.     INTRODUCTION ........................................................................................ 1

II.    STANDARD OF REVIEW .......................................................................... 2

III.   FACTUAL ALLEGATIONS ....................................................................... 2

IV.   ARGUMENT AND AUTHORITIES ........................................................... 6

        A.   PLAINTIFF ADEQUATELY PLEADED A BREACH OF WRITTEN EMPLOYMENT CONTRACT BY DEFENDANT AND RESULTING DAMAGES .......................... 6

        B.   PLAINTIFF'S ADEQUATELY PLEADED A QUANTUM MERUIT/UNJUST ENRICHMENT CLAIM .............................................................................. 8

V.    PLAINTIFF'S REQUEST FOR LEAVE TO AMEND .................................. 10

VI.   CONCLUSION AND PRAYER ................................................................. 10

        CERTIFICATE OF SERVICE .................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009)..................................................................................................2

*Barker v. Riverside Cnty. Office of Educ.*,
  584 F.3d 821 (9th Cir. 2009) ....................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................2

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ....................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................................2, 10

FRCP 8............................................................................................................................2

FRCP 8(c) .......................................................................................................................2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KRISHNENDU DASGUPTA | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 4:23cv838 |
| | § | |
| BECKETT COLLECTIBLES, LLC | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL
COMPLAINT AND BRIEF IN SUPPORT**

Plaintiff Krishnendu Dasgupta ("Plaintiff" or "Dasgupta") responds in opposition to the Motion to Dismiss filed by Defendant Beckett Collectibles, LLC ("Defendant" or "Beckett") in this case, and in support shows the Court as follows:

**I.**

**INTRODUCTION**

1.01   Defendant's Motion to Dismiss and Brief in Support (the "Motion") is premised upon the Defendant's allegations that Plaintiff failed to adequately plead Plaintiff's claims as follows:

A.   Plaintiff failed to plead adequately Plaintiff's breach of written employment contract (Exhibit A to complaint) by Beckett and resulting damages.

B.   Plaintiff failed to plead adequately Plaintiff's quantum meruit/unjust enrichment claim.

1.02   However, Plaintiff's claims have been adequately pleaded in accordance with FRCP 8 by listing each element of Plaintiff's claims followed by a reference to sections of Plaintiff's complaint where the element is pleaded.

1.03   Therefore, Defendant's Motion to Dismiss should be denied in its entirety.

## II.

## STANDARD OF REVIEW

**Fed. R. Civ. P. 12(b)(6) Standard for Dismissal for Failure to State a Claim**

2.01   FRCP 8 provides as follows with respect to pleading:

2.02   FRCP 8(c) provides that matters giving rise to Defendant's defense of cause for Plaintiff's termination, including specifically failure of consideration, are affirmative defenses which must be affirmatively pleaded by Defendant, not Plaintiff, as argued by Defendant.

2.03   When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); see *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is possible, a court should deny the defendant's motion. See *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.

## FACTUAL ALLEGATIONS

3.01   Factual allegations adapted from Plaintiff's Original Complaint are as follows:

3.02    Plaintiff has an employment history of being VP of Data with ESPN and before that a long history at Disney. In May 2021 Plaintiff met Scott Roskind, Founder and CEO of Noxx through an associate. Plaintiff was hired as Chief Technology Officer ("CTO") of Noxx with a salary of $125,000 per year.

3.03    In December 2021 Noxx was considered for acquisition by Defendant Beckett Collectibles, LLC. At that time, Noxx went through a technical due diligence review performed by Defendant's consultants.

3.04    In February 2022 Defendant completed their due diligence and decided they would like to purchase Noxx. An Intent to Purchase was agreed to.

3.05    In March 2022 Defendant came up with a set of milestones. The milestones were set before Noxx had any look at the current Beckett software architecture. Noxx was not allowed to get any details until the real closing. So, Noxx added a statement that said milestones are subject to agreed and reasonable changes.

3.06    In August 2022 Beckett finally indicated that the deal would go through. At this point, Noxx had wasted five (5) months in a holding pattern, with no details from Beckett.

3.07    In September 2022 Beckett finally bought Noxx. Plaintiff was hired as Head of Engineering at Beckett with a salary of $250,000 per year. Plaintiff entered into an Employment Agreement effective as of March 24, 2022, a copy of which is attached as **Exhibit A** hereto and incorporated herein by reference. Plaintiff reported to Kunal Chopra, CEO of Beckett. Plaintiff did a deep dive to lay out a plan for integrating the software systems 4-6 month integration plan. The plan was at this time Beckett CTO was Chris Batista (contractor from a consulting company PlainSpoken). He and Plaintiff agreed that to shortcut getting Noxx live, they would use the Noxx system for data, only integrating the "new PlainSpoken Data Platform" from Beckett.

3.08    In October 2022 the PlainSpoken Data Platform was analyzed for use by Plaintiff. Plaintiff learned that no one has integrated its use to date, and that they were running on a $2 million a year software package that was recommended by a board member's former company.  Normal standard data platforms (Facebook, Twitter, Netflix, Google, AWS) use normal open source data platforms (as Noxx was on). It was apparent that integrating this crazy platform was going to take some time. Since Plaintiff and his team would be the only team using the data platform, Plaintiff had to do lots of debugging and back and forth. (worth noting, after Plaintiff left, they terminated their new data platform that they spent $2 million on, which Plaintiff had recommended all along).

3.09    In October 2022 Plaintiff and his team had a meeting in Dallas to announce the new structure.  Plaintiff was part of the Senior Leadership Team.   Previous to this meeting, Plaintiff was asked by the CEO (Kunal Chopra) to create on paper the ideal technical organization and function. Plaintiff did that. It was never commented on except by the head of product, Justin Richmond ("Justin"). He was a contractor with no Digital Product leadership experience.  He was friends with the Board member who had recommended the bad data platform.  He also worked at the data platform company. Justin sent Plaintiff an email regarding Plaintiff's organization and structure updates telling Plaintiff to "STAND DOWN." It was aggressive and odd so Plaintiff shared it with Defendant's CEO, Kunal Chopra.

3.10    In October 2022 Defendant had a meeting in Dallas, Texas.  On the morning of the meeting, Plaintiff left his hotel room and went downstairs, in pajamas, to get coffee and a light breakfast before showering. As Plaintiff got his coffee, Justin was sitting eating breakfast. He beckoned Plaintiff to his table, rudely, and Plaintiff sat down. The following conversation took place:  "Hey Justin, what's up - just grabbing a coffee". Justin : "You don't like me very much, do

you? " Krish: "Well, whatever differences we have had, let's start fresh and try again." Justin : "You don't really mean that." Krish: "Uhmmm, I'm good, going back to my room." Justin: "Krish, no one likes you here. Even Kunal doesn't have your back." Krish: "I doubt that Justin.  I have lots of support and many people telling me I'm exactly what Beckett needs." Justin pulls out his phone, at 7am "Let me call Kunal and ask him." Justin waves his phone in my face. Krish: "No, don't do that. That's nuts."  At this point Plaintiff got up and walked back to the elevators.   Justin :" Are you walking away from me?"

  3.11 Plaintiff returned to his room, shaken, and considering just going back home to Connecticut.  Plaintiff went through a long text conversation with the Beckett CEO Kunal and Scott, (now Head of Marketing at Beckett) saying, "hey - you know what, I might be better off just being an engineer and not being in the leadership group.   I really don't want constant conflict." Plaintiff talked to HR that morning and got "Oh Justin is a big teddy bear (Beckett HR were laughing)." Krish: "Uhmm, I didn't see that and frankly felt threatened physically."  Beckett HR "Oh, he' a great guy" [Beckett HR said this same thing to one of Plaintiff's employees when they went to HR about a similar person to Justin, laughed it off] [Justin was fired weeks after Plaintiff was let go, Kunal was fired a couple weeks later, the HR person Plaintiff talked to was fired weeks after that]

  3.12 So at the "ALL" Hands meeting, Kunal put up the organizational chart, but with no names filled in. Plaintiff asked, "I think we would all like to know who reports to whom" (Crowd agrees).   Kunal "Krish, we need to be a team, a team everyone knows what they need to do."  Plaintiff, "Ok". And that was that. Plaintiff was hardly being difficult.

  3.13 In November 2022, Plaintiff was told that the team that supports the data of the expensive, "PlainSpoken Data Platform" was being let go on December 11, 2022.  Plaintiff's team

still had things that needed to be done, so Plaintiff's team prioritized them to make sure things got done.

3.14　In December 2022 Plaintiff's team was left using the new data system on their own, being told by the person that was put in charge of it (not Plaintiff, for whatever reason, and he was a contractor at Beckett) that, "The contractor won't be able to help us for some time." At this point, Plaintiff's team created some of their own data endpoints in that system to accomplish both their Beckett needs and milestone needs.

3.15　In December 2022 Plaintiff and his team were working feverishly (60-70 hour weeks) to get their product integrated with the new data and on the Beckett platform. Plaintiff's team had only been part of Beckett for 90 days, but had already done an amazing amount of work trying to fix things that were Beckett problems.

3.16　In January 2023 Dave LeBlanc, Head of HR and Julie R. called and informed Plaintiff that he was being terminated. This was an extreme shock to Plaintiff and other executives. Plaintiff asked for a reason. They said that they would send Plaintiff an email with reasoning in the termination letter, but no cause was alleged in the letter.

## IV.

## ARGUMENT AND AUTHORITIES

**A.　Plaintiff Adequately Pleaded A Breach of Written Employment Agreement By Defendant.**

4.01　Defendant sets forth the elements of a breach of contract claim under Texas law at page 5 of Defendant's motion as follows, with references to Plaintiff's responsive pleading inserted after such element:

**1.　The existence of a valid contract.**

### Plaintiff's Pleading

"Plaintiff entered into an Employment Agreement effective as of March 24, 2022, a copy of which is attached as Exhibit A hereto, an incorporated herein by reference."

2. **Performance or tendered performance by the Plaintiff.**

### Plaintiff's Pleading

Sections 4.07 – 4.15 details Plaintiff's performance and tendered performance.

Section 5.04 states as follows: "Plaintiff has fully performed his contract obligations, thereby taking the employment contract outside of the parol evidence rule."

Section 4.14 of Petition reads as follows: "In December 2022 Plaintiff and his team were working feverishly (60-70 hour weeks) to get their product integrated with the new data and on the Beckett platform. Plaintiff's team had only been part of Beckett for 90 days, but had already done an amazing amount of work trying to fix things that were Beckett problems."

3. **Breach of the contract by the defendant.**

### Plaintiff's Pleading

Section 4.15 reads as follows: "In January 2023 Dave LeBlanc, Head of HR and Julie R. called and informed Plaintiff that he was being terminated. This was an extreme shock to Plaintiff and other executives. Plaintiff asked for a reason. They said that they would send Plaintiff an email with reasoning in the termination letter, but no cause was alleged in the letter."

Section 5.02 reads as follows: "Plaintiff fully performed his contract with Defendant, attached as Exhibit A hereto and incorporated herein by reference, but Defendant has materially breached Plaintiff's contracts by failing to pay Plaintiff his severance as provided in the contract."

4. **Damages suffered by the Plaintiff as a result of the breach.**

### Plaintiff's Pleading

<u>Section 5.03</u> reads as follows: "As a result of such breaches, Plaintiff has suffered damages, all of which were reasonably foreseeable, including sums due as set forth below and other direct, indirect, incidental and consequential damages, both pre-termination and post-termination, for which Plaintiff sues."

4.02    Section 5(c) of the employment contract attached as Exhibit A to Plaintiff's pleading provides that in the event Plaintiff was terminated Plaintiff would receive 1 year of his current base salary, which was stated to be $250,000 in Section 4.06 of the pleading , plus Accrued Benefits, including bonus, referred to in Plaintiff's pleading in Section 5.03 as "direct, indirect, incidental and consequential damages."

4.03    All of the contract language was incorporated into the complaint in Section 4.06.

**B.    Plaintiff Adequately Pleaded A Quantum Meruit/Unjust Enrichment**

4.04    Plaintiff's quantum meruit/unjust enrichment claim is pleaded as an alternative to Plaintiff's breach of contract claim in the event Plaintiff's contract could be declared void or otherwise invalid.  Without the alternative claim, of the contract were held to be unenforceable Plaintiff could be barred from seeking other relief by the election of remedies doctrine.

4.05    Defendant lists the elements of Plaintiff's quantum meruit claim at page 10 of Defendant's Motion as follows:

**1.    Plaintiff must plead that Plaintiff rendered valuable service to Defendant.**

**Plaintiff's Pleading**

Plaintiff's petition lists valuable services rendered by Plaintiff in Sections 4.07, 4.12, 4.13, and 4.14.

**2.    Plaintiff must show services were rendered for the person sought to be charged.**

**Plaintiff's Pleading**

Plaintiff's petition shows that services were rendered for Sections 4.06, Exhibit A (Plaintiff's Employment Agreement), 4.07, 4.08, 4.11, 4.13, 4.15, 5.02, and 6.02.

### 3. Services rendered were accepted by Defendant.

**Plaintiff's Pleading**

Plaintiff's petition shows that Plaintiff's services rendered were accepted by Defendant in Sections 4.06, 4.07, 4.12, 4.13, 4.14, 5.04 and 6.02.

### 4. Plaintiff must show that Plaintiff was expecting to be paid by Defendant.

**Plaintiff's Pleading**

Plaintiff's petition shows that Plaintiff was expecting to be paid by Defendant in Section 4.06, Exhibit A, 4.11, 5.02, 5.05, 6.02, and 6.03.

### 5. Defendant lists the elements of Plaintiff's unjust enrichment claim at page 10 of the Motion as follows: "Plaintiff must prove that Defendant obtained a benefit from Plaintiff by fraud, duress or the taking of an unfair advantage.

**Plaintiff's Pleading**

Plaintiff's petition shows that Defendant obtained a benefit from Plaintiff by duress and taking of an unfair advantage in Section 4.08 (alleging that an outside contractor "Justin" with no relevant Digital Product leadership experience but with inside Board member influence, ordered Plaintiff to "STAND DOWN," Section 4.09 (in which Justin is alleged to have threatened Plaintiff physically), Section 4.10 (in which Plaintiff alleges he was threatened physically by Justin, which was ignored by upper management (although Justin was fired only 2 weeks later) and 4.11 (where Plaintiff asked who he reported to, and was again ignored).

# V.

## **PLAINTIFF'S REQUEST FOR LEAVE TO AMEND**

5.01   Plaintiff requests leave to file an amended complaint repleading any matters deemed necessary by the Court.

# VI.

## **CONCLUSION AND PRAYER**

6.01   For the foregoing reasons, Plaintiff states claims in Plaintiff's Original Complaint upon which relief can be granted. Accordingly, Plaintiff respectfully requests that Defendant's Motion to Dismiss Plaintiff's claims be denied pursuant to Federal Rule of Civil Procedure 12(b)(6).

6.02   Plaintiff also seeks leave to amend in the alternative.

6.03   Plaintiff seeks general relief.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*

W.D. Masterson
State Bar No. 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, TX  75219
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF
KRISHNENDU DASGUPTA**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing document has been served on Defendant's counsel of record via E-File and/or email, on this 2nd day of December 2023:

| | |
|---|---|
| Aaron Z. Tobin | Abigail R.S. Campbell |
| Condon Tobin Sladek Thornton Nerenberg, PLLC | Condon Tobin Sladek Thornton Nerenberg, PLLC |
| 8080 Park Lane, Suite 700 | 8080 Park Lane, Suite 700 |
| Dallas, Texas 75231 | Dallas, Texas 75231 |
| atobin@condontobin.com | acampbell@condontobin.com |

*/s/ W. D. Masterson*
_____
W.D. Masterson