**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **KRISHNENDU DASGUPTA,** | § | |
| *Plaintiff,* | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:23-CV-00838** **JUDGE MAZZANT** |
| **BECKETT COLLECTIBLES, LLC** | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully Submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*

W.D. Masterson
SBN: 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF,**
**KRISHNENDU DASGUPTA**

# TABLE OF CONTENTS

**PAGE**


TABLE OF CONTENTS ........ ii

LIST OF EXHIBITS ........ iii

TABLE OF AUTHORITIES ........ iv

I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ........ 1

II. SUMMARY JUDGMENT EVIDENCE ........ 3

III. BACKGROUND FACTS ........ 3

IV. LEGAL STANDARD ........ 6

V. ARGUMENT AND AUTHORITIES ........ 7

A. BREACH OF CONTRACT LEGAL AUTHORITIES ........ 7

B. DEFENDANT WILLFULLY AND INTENTIONALLY BREACHED PLAINTIFF'S CONTRACT ........ 8

C. TIMELINE OF DEFENDANT'S ACTS OF BREACH ........ 9

D. PLAINTIFF'S DAMAGES ........ 9

VI. PRAYER ........ 9

CERTIFICATE OF SERVICE ........ 10

## LIST OF EXHIBITS


| Exhibit No. | Description | Page No. |
|---|---|---|
| **1.** | Declaration of Plaintiff | PApp 3-7 |
| **2.** | Plaintiff's March 24, 2022 Employment Agreement | PApp 8-26 |
| **3.** | January 3, 2023 Reduction In Force Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff. | PApp 27-28 |
| **4.** | Defendant's January 8, 2023, Notice of Termination Without Fact Statement of Cause. | PApp 29 |
| **5.** | Defendant's April 16, 2024, Responses to Plaintiff's First Set of Interrogatories | PApp 30-36 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....7

*Leonard v. Dixie Well Serv. & Supply, Inc.*,
828 F.2d 291 (5th Cir. 1987) ....7

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
475 U.S. 574 (1986)....7

*McAllen Hosps., L.P. v. Lopez*,
576 S.W.3d 389 (Tex 2019)....7

*Turner v. Ewing*,
625 S.W.3d 510 (Tex.App-Houston [14th Dist] 2020 pet. denied)....7

*Valley Forge, Inc. v. CK Constr., Inc.*,
_S.W.3d_, 2023 WL 3395134 (Tex.App.-El Paso 2023, no pet.) ....7

**Other Authorities**

Fed. R. Civ. P. 56....7

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **KRISHNENDU DASGUPTA,** | § | |
| ***Plaintiff,*** | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:23-CV-00838** **JUDGE MAZZANT** |
| **BECKETT COLLECTIBLES, LLC** | § | |
| ***Defendant.*** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff Krishnendu Dasgupta ("Plaintiff") and files this Motion for Summary Judgment against Defendant Beckett Collectibles, LLC ("Defendant" or "Beckett"), and in support thereof respectfully shows the Court as follows:

### I.

### INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.01 Plaintiff signed an Employment Agreement (**Exhibit 2,** *PApp 8-26*) which states that if the contract was terminated by Defendant without cause Plaintiff would be paid a year's salary which was $250,000.

1.02 Defendant attempted to terminate Plaintiff for Cause (**Exhibit 4,** *PApp 29*) by referring in the Notice of Termination to Section 5(a)(iii) in the Employment Agreement which in turn refers to Section 5(f) of the Agreement for a definition of Cause. However, Defendant's attempt failed because Section 5(f) does not provide any definition of "Cause," which was defined

in Section 5(e), not (f), which results in a failure to allege cause. Further, there was no attempt to allege any facts in the Notice of Termination to support a termination for Cause.

1.03 Subsequently, Defendant attempted belatedly to overcome its failure to make a termination for cause by answering Plaintiff's Interrogatory No. 5 (**Exhibit 5,** *PApp 30-36*) by claiming that Plaintiff gave project updates that Defendant claims were "insubordinate and dishonest." Defendant does not claim that updates were untrue, and sometimes the truth hurts, but telling the truth can scarcely be cited as giving cause for termination.

1.04 Plaintiff never received any written warnings, counseling, progressive discipline or performance improvement plans to support an allegation of termination for cause.

1.05 At and about the time Plaintiff was terminated, ten other employees were terminated pursuant to a written reduction in force plan (**Exhibit 3**, *PApp 27-28*) without any statement or allegation of cause by Plaintiff or anyone else.

1.06 However, Defendant refused to pay the $250,000 as agreed to in the Employment Agreement, claiming that Plaintiff was terminated for cause.

**<u>Statement of Issues To Be Decided By The Court</u>**

1. Whether Defendant breached Plaintiff's written Employment Agreement. (**Exhibit 2,** *PApp 8-26*).
2. Whether Defendant terminated Plaintiff for good cause on January 3, 2023, which entitled Defendant to withhold Plaintiff's contracted severance amount.
3. Whether Plaintiff is entitled to collect attorneys' fees.

## II.

## SUMMARY JUDGMENT EVIDENCE

2.01 To support this motion, Plaintiff offers the following summary judgment evidence appearing in the List of Exhibits, and incorporates the evidence into this motion by reference.

**1.** Declaration of Plaintiff

**2.** Plaintiff's March 24, 2022 Employment Agreement

**3.** January 3, 2023 Reduction In Force Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff.

**4.** Defendant's January 8, 2023, Notice of Termination Without Fact Statement of Cause.

**5.** Defendant's April 16, 2024, Responses to Plaintiff's First Set of Interrogatories

## III.

## BACKGROUND FACTS

3.01 The following facts are supported by the Declaration of Plaintiff, Krishnendu Dasgupta (**Exhibit 1**, *PApp 3-7*).

3.02 Plaintiff has an employment history of being VP of Data with ESPN and before that a long history at Disney. In May 2021 Plaintiff met Scott Roskind, Founder and CEO of Noxx through an associate. Plaintiff was hired as Chief Technology Officer ("CTO") of Noxx with a salary of $125,000 per year.

3.03 In December 2021 Noxx was considered for acquisition by Defendant Beckett Collectibles, LLC. The business of Beckett was to buy, sell and trade baseball cards. At that time, Noxx went through a technical due diligence review performed by Defendant's consultants.

3.04 In February 2022 Defendant completed their due diligence and decided they would like to purchase Noxx. An Intent to Purchase was agreed to.

3.05 In March 2022 Defendant came up with a set of milestones. The milestones were set before Noxx had any look at the current Beckett software architecture. Noxx was not allowed to get any details until the real closing. So, Noxx added a statement that said milestones were subject to agreed and reasonable changes.

3.06 In August 2022 Beckett finally indicated that the deal would go through. At this point, Noxx had wasted five (5) months in a holding pattern, with no details from Beckett.

3.07 In September 2022 Beckett finally bought Noxx for $20,000,000. Plaintiff was hired as Head of Engineering at Beckett with an increased salary of $250,000 per year. Plaintiff entered into an Employment Agreement effective as of March 24, 2022, a copy of which is attached as **Exhibit 2**, *PApp 8-26* hereto and incorporated herein by reference. Plaintiff reported to Kunal Chopra, CEO of Beckett. Plaintiff did a deep dive to lay out a plan for integrating the software systems in a 4-6 month integration plan. At this time Beckett CTO was Chris Batista (contractor from a consulting company PlainSpoken). He and Plaintiff agreed that to shortcut getting Noxx live, they would use the Noxx system for data, only integrating the "new PlainSpoken Data Platform" from Beckett.

3.08 In October 2022 the PlainSpoken Data Platform was analyzed for use by Plaintiff. Plaintiff learned that no one has integrated its use to date, and that they were running on a $2,000,000 a year software package that was recommended by a board member's former company. Beckett's software package had been designed for a military supplier while Beckett's business was baseball cards. Normal standard data platforms (Facebook, Twitter, Netflix, Google, AWS) use normal open source data platforms (as Noxx was on). It was apparent that integrating

this crazy platform was going to take some time. Since Plaintiff and his team would be the only team using the data platform, Plaintiff had to do lots of debugging and back and forth. (worth noting, after Plaintiff left, they terminated their new data platform that they spent $2,000,000 on, an action which Plaintiff had recommended all along).

3.09 In October 2022 Plaintiff and his team had a meeting in Dallas to announce the new structure. Plaintiff was part of the Senior Leadership Team. Previous to this meeting, Plaintiff was asked by the CEO (Kunal Chopra) to create on paper the ideal technical organization and function. Plaintiff did that. It was never commented on except by the head of product, Justin Richmond ("Justin"). He was a contractor with no Digital Product leadership experience. He was friends with the Board member who had recommended the bad data platform. He also worked at the data platform company. Justin sent Plaintiff an email regarding Plaintiff's organization and structure updates telling Plaintiff to "STAND DOWN." It was aggressive and odd so Plaintiff shared it with Defendant's CEO, Kunal Chopra.

3.10 In November 2022, Plaintiff was told that the team that supported the data of the expensive "PlainSpoken Data Platform" was being let go on December 11, 2022. Plaintiff's team still had things that needed to be done, so Plaintiff's team prioritized them to make sure things got done.

3.11 In December 2022 Plaintiff's team was left using the new data system on their own, being told by the person that was put in charge of it (he was a contractor at Beckett) that, "The contractor won't be able to help us for some time." At this point, Plaintiff's team created some of their own data endpoints in that system to accomplish both their Beckett needs and milestone needs.

3.12 In December 2022 Plaintiff and his team were working feverishly (60-70 hour weeks) to get their product integrated with the new data system and on the Beckett platform. Plaintiff's team had only been part of Beckett for 90 days, but had already done an amazing amount of work trying to fix things that were Beckett problems.

3.13 In January 2023 Dave LeBlanc, Head of HR and Julie R. called and informed Plaintiff that he was being terminated. This was an extreme shock to Plaintiff and other executives. Plaintiff asked for a reason. They said that they would send Plaintiff an email with reasoning in the termination letter, but no cause was alleged in the letter (**Exhibit 4**, *PApp 29*).

3.14 It is obvious from the January 3, 2023, letter to Beckett CEO Kumal Chopra (**Exhibit 3**, *PApp 27-28*) that in 2023, Defendant Beckett was continuing its reduction in work force, which began on December 11, 2023, when Defendant terminated their entire workforce which had been responsible for their in-house data management system prior to the Noxx acquisition. Then Defendant decided to continue the reduction in 2022 by scheduling the termination of the entire Noxx data management team, starting with Plaintiff since he was the highest paid at $250,000. **Exhibit 3**, *PApp 27-28* states that the work was being shifted to companies which were affiliates of Defendant in India, where a workforce could be employed at much lower costs. Thus, Plaintiff's terminated had nothing to do with performance because Plaintiff was terminated just because Plaintiff was a member of the Noxx workforce being terminated as part of a reduction in force.

## IV.

## LEGAL STANDARD

4.01 The Court must grant summary judgment when there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which movant believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet its burden by identifying elements of a plaintiff's claims that are not supported by any evidence. *Id.* The burden then shifts to the non-moving party to establish the existence of a genuine issue for trial, which requires "more than simply show that there is some metaphysical doubt as to the material facts . . ." *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

## V.

## ARGUMENT AND AUTHORITIES

### A. Breach of Contract Legal Authorities.

5.01 The elements of an action for breach of contract are the following:

1. There is a valid enforceable contract.
2. The plaintiff is a proper party to bring suit for breach of contract.
3. The defendant breached the contract.
4. The defendant's breach caused plaintiff injury.

5.02 The elements can be found in the following: *McAllen Hosps., L.P. v. Lopez,* 576 S.W.3d 389, 392 (Tex 2019) (element 1); *Valley Forge, Inc. v. CK Constr., Inc.,* _S.W.3d_, 2023 WL 3395134 (Tex.App.-El Paso 2023, no pet.) (No. 08-22-00084-CV; 5-11-23) (elements 21, 3-5); *Turner v. Ewing,*, 625 S.W.3d 510, 518 (Tex.App-Houston [14th Dist] 2020 pet. denied) (elements 1, 3-5).

**B. The Defendant Willfully and Intentionally Breached Plaintiff's Contract.**

5.03 A key element of the breach of contract which Plaintiff has sued Defendant for is the breach. In this case there is ample evidence to support the intentionality of the breach of contract.

5.04 It is apparent from the Background Facts that management of Defendant Beckett soon realized after acquiring the PlainSpoken System Data Platform which had been designed for use by a military or space contractor for $2,000,000 was not suitable for use by Defendant, a baseball card dealer.

5.05 Defendant acquired Noxx for $20,000,000 in September, 2022, in order to acquire its data platform, without realizing that integrating the PlainSpoken system with the Noxx platform would be a major project since the PlainSpoken System didn't use normal open source data platforms.

5.06 This major problem of integration led Defendant to make a reduction in workforce in which Defendant terminated its own data management employees on December 11, 2022. At some point during this time period Defendant decided to transfer the integration and data management work to affiliated companies in India, where employment costs are much lower.

5.07 In order to make this transfer Defendant then scheduled a reduction in force of the former Noxx workforce, including Plaintiff. This had nothing to do with Plaintiff's performance, it was just a case of being in the wrong place at the wrong time.

5.08 Therefore, Defendant is liable to Plaintiff for the Severance amount provided for in Section 5(c) of his Agreement, which is $250,000.

5.09 Defendant's argument that Plaintiff was terminated for cause not only is not provided for in the agreement for the reasons set forth in the Introduction, but also is not supported

by the great weight of evidence in this case as set forth in Plaintiff's Declaration which is attached as **Exhibit 1**, *PApp 3-7* hereto.

**C. Timeline of Case Events.**

5.10 Defendant's breach of contract is clear from the following timeline.

| **Date** | **Event** |
|---|---|
| March 24, 2022 | Plaintiff entered into an Employment Agreement with Defendant. |
| 1/3/2023 | Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff. |
| 1/8/2023 | Defendant terminated Plaintiff's contract |
| 8/14/2023 | Plaintiff filed suit for breach of contract. |

**D. Plaintiff's Damages.**

5.11 The Employment Agreement (**Exhibit 2**, *PApp 8-26*) provides in Section 5(c) that upon termination of employment without cause prior to conclusion of the Employment Period Plaintiff is entitled to receive a Severance Amount equal to his Base Salary which was $250,000, per annum at the time of his termination.

**VI.**

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**,

6.01 Plaintiff respectfully prays that this Court grant his Motion for Summary Judgment, and for such other and further relief, both general or special, at law or in equity, to which Plaintiff may be justly entitled.

July 3, 2024

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*

W.D. Masterson
SBN: 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF, KRISHNENDU DASGUPTA**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on Defendant's counsel of record via E-File and/or email, on this 3rd day of July 2024:

Aaron Z. Tobin
CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
atobin@condontobin.com

Justin D. Hanna
CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
jhanna@condontobin.com

Christiana L. Leinbaugh
CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
cleinbaugh@condontobin.com

Abigail R.S. Campbell
CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
acampbell@condontobin.com

*W. D. Masterson*
W. D. Masterson