IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KRISHNENDU DASGUPTA § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CASE NO. 4:23-cv-00838 |
| § | |
| BECKETT COLLECTIBLES, LLC § | |
| § | |
| *Defendant*. § | |
| § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

**KILGORE & KILGORE, PLLC**

W. D. Masterson
SBN NO.: 13184000
wdm@kilgorelaw.com

3141 Hood Street, Suite 500
Dallas, Texas 75219
214/969-9099 - Telephone
214/953-0133 - Fax

**ATTORNEYS FOR PLAINTIFF
KRISHNENDU DASGUPTA**

# **TABLE OF CONTENTS**

                                                                              **PAGE**

TABLE OF CONTENTS ............................................................................................ ii

LIST OF EXHIBITS .................................................................................................. iii

TABLE OF AUTHORITIES ....................................................................................... iv

I.      INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................................................................................... 1

II.     RESPONSE EVIDENCE ............................................................................... 2

III.    BACKGROUND FACTS .............................................................................. 3

IV.    LEGAL STANDARD ................................................................................... 6

V.     ARGUMENT AND AUTHORITIES ............................................................ 7

        A.   PLAINTIFF'S OBJECTION TO THE KEVIN ISAACSON "AFFIDAVIT" ATTACHED TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE ............................................................. 7

        B.   BREACH OF CONTRACT LEGAL AUTHORITIES ............................ 7

        C.   DEFENDANT WILLFULLY AND INTENTIONALLY BREACHED PLAINTIFF'S CONTRACT ............................................................. 8

        D.   TIMELINE OF DEFENDANT'S ACTS OF BREACH .......................... 9

        E.   PLAINTIFF'S DAMAGES ............................................................... 9

VI.   CONCLUSION AND PRAYER .................................................................... 9

        CERTIFICATE OF SERVICE ................................................................... 10

## LIST OF EXHIBITS

| Exhibit No. | Description | Page No. |
|---|---|---|
| 1. | Declaration of Plaintiff | PApp 3-7 |
| 2. | Plaintiff's March 24, 2022 Employment Agreement | PApp 8-26 |
| 3. | January 3, 2023 Reduction In Force Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff. | PApp 27-28 |
| 4. | Defendant's January 8, 2023, Notice of Termination Without Fact Statement of Cause. | PApp 29 |
| 5. | Defendant's April 16, 2024, Responses to Plaintiff's First Set of Interrogatories | PApp 30-36 |
| 6. | Plaintiff's Original Petition in Scott Roskind, et al v. Beckett Collectibles, LLC; Cause No. CC-24-04214-D in the County Court at Law No.4 in Dallas County, Texas | PApp 37-69 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
   477 U.S. 317 106 S.Ct. 2548 (1986)........................................................................................6

*Hom v. Squire*,
   81 F.3d 969 (10th Cir. 1996) ...................................................................................................6

*Lujan v. National Wildlife Fed'n*,
   497 U.S. 871 (1990).................................................................................................................6

*McAllen Hosps., L.P. v. Lopez*,
   576 S.W.3d 389 (Tex 2019).....................................................................................................7

*Turner v. Ewing*,
   625 S.W.3d 510 (Tex.App-Houston [14th Dist] 2020 pet. denied)..........................................8

*Valley Forge, Inc. v. CK Constr., Inc.*,
   _S.W.3d_, 2023 WL 3395134 (Tex.App.-El Paso 2023, no pet.) ...........................................7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **KRISHNENDU DASGUPTA** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| **v.** § | CASE NO. 4:23-cv-00838 |
| § | |
| **BECKETT COLLECTIBLES, LLC** § | |
| § | |
| *Defendant.* § | |
| § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiff Krishnendu Dasgupta ("Plaintiff" or "Dasgupta") responds in opposition to the Motion For Summary Judgment filed by Defendant Beckett Collectibles, LLC ("Defendant" or "Beckett") in this case, and in support shows the Court as follows:

**I.**

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.01    Plaintiff has just become aware of a petition filed in Scott Roskind, et al v. Beckett Collectibles, LLC, et al, No. CC-24-04214-D in Dallas County Court No.4 in Dallas County, Texas. See **Exhibit 6**, *PApp 37-69* hereto.  This suit alleges a massive fraud committed by the named defendants, including Defendant's affiant herein, Kevin Isaacson, against Plaintiff's former employer Noxx Technologies, Inc., which involved the not-for-cause layoffs of Plaintiff and other former Noxx employees.  Such alleged fraud fully explains the not-for-cause termination of Plaintiff and   totally contradicts the for cause termination defense alleged by Defendant herein.

1.02    A copy of the newly filed suit is attached as **Exhibit 6**, *PApp 37-69* hereto for a full recitation of the background facts alleged therein, which are too voluminous to repeat herein.

1.03    Although the facts alleged in **Exhibit 6,** *PApp 37-69* as and when developed will more fully support Plaintiff's pending motion for summary judgment, Plaintiff submits that Plaintiff's motion should be granted based upon the facts and evidence already presented therein.

1.04    As noted hereafter, the keystone to the Defendant's Motion for Summary Judgment herein, the Isaacson "Affidavit," should be stricken, whereupon the Defendant's Response should be disregarded.

## II.

## RESPONSE EVIDENCE

2.01    To support this response, Plaintiff offers the following evidence appearing in the List of Exhibits, and incorporates the evidence into this response by reference.

**1.**    Declaration of Plaintiff

**2.**    Plaintiff's March 24, 2022 Employment Agreement

**3.**    January 3, 2023 Reduction In Force Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff.

**4.**    Defendant's January 8, 2023, Notice of Termination Without Fact Statement of Cause.

**5.**    Defendant's April 16, 2024, Responses to Plaintiff's First Set of Interrogatories

**6.**    Plaintiff's Original Petition in Scott Roskind, et al v. Beckett Collectibles, LLC; Cause No. CC-24-04214-D in the County Court at Law No.4 in Dallas County, Texas

### III.

### BACKGROUND FACTS

3.01    The following facts are supported by the Declaration of Plaintiff, Krishnendu Dasgupta (**Exhibit 1**, *PApp 3-7*).

3.02    Plaintiff has an employment history of being VP of Data with ESPN and before that a long history at Disney. In May 2021 Plaintiff met Scott Roskind, Founder and CEO of Noxx through an associate. Plaintiff was hired as Chief Technology Officer ("CTO") of Noxx with a salary of $125,000 per year.

3.03    In December 2021 Noxx was considered for acquisition by Defendant Beckett Collectibles, LLC. The business of Beckett was to buy, sell and trade baseball cards. At that time, Noxx went through a technical due diligence review performed by Defendant's consultants.

3.04    In February 2022 Defendant completed their due diligence and decided they would like to purchase Noxx. An Intent to Purchase was agreed to.

3.05    In March 2022 Defendant came up with a set of milestones. The milestones were set before Noxx had any look at the current Beckett software architecture. Noxx was not allowed to get any details until the real closing. So, Noxx added a statement that said milestones were subject to agreed and reasonable changes.

3.06    In August 2022 Beckett finally indicated that the deal would go through. At this point, Noxx had wasted five (5) months in a holding pattern, with no details from Beckett.

3.07    In September 2022 Beckett finally bought Noxx for $20,000,000. Plaintiff was hired as Head of Engineering at Beckett with an increased salary of $250,000 per year. Plaintiff entered into an Employment Agreement effective as of March 24, 2022, a copy of which is attached as **Exhibit 2**, *PApp 8-26* hereto and incorporated herein by reference. Plaintiff reported to Kunal

Chopra, CEO of Beckett.  Plaintiff did a deep dive to lay out a plan for integrating the software systems in a 4-6 month integration plan.  At this time Beckett CTO was Chris Batista (contractor from a consulting company PlainSpoken).  He and Plaintiff agreed that to shortcut getting Noxx live, they would use the Noxx system for data, only integrating the "new PlainSpoken Data Platform" from Beckett.

        3.08    In October 2022 the PlainSpoken Data Platform was analyzed for use by Plaintiff. Plaintiff learned that no one had integrated its use to date, and that they were running on a $2,000,000 a year software package that was recommended by a board member's former company.  Beckett's software package had been designed for a military supplier while Beckett's business was baseball cards.  Normal standard data platforms (Facebook, Twitter, Netflix, Google, AWS)  use normal open source data platforms (as Noxx was on). It was apparent that integrating this crazy platform was going to take some time. Since Plaintiff and his team would be the only team using the data platform, Plaintiff had to do lots of debugging and back and forth. (worth noting, after Plaintiff left, they terminated their new data platform that they spent $2,000,000 on, an action which Plaintiff had recommended all along).

        3.09    In October 2022 Plaintiff and his team had a meeting in Dallas to announce the new structure.  Plaintiff was part of the Senior Leadership Team.   Previous to this meeting, Plaintiff was asked by the CEO (Kunal Chopra) to create on paper the ideal technical organization and function. Plaintiff did that. It was never commented on except by the head of product, Justin Richmond ("Justin"). He was a contractor with no Digital Product leadership experience.  He was friends with the Board member who had recommended the bad data platform.  He also worked at the data platform company. Justin sent Plaintiff an email regarding Plaintiff's organization and

structure updates telling Plaintiff to "STAND DOWN." It was aggressive and odd so Plaintiff shared it with Defendant's CEO, Kunal Chopra.

3.10    In November 2022, Plaintiff was told that the team that supported the data of the expensive "PlainSpoken Data Platform" was being let go on December 11, 2022. Plaintiff's team still had things that needed to be done, so Plaintiff's team prioritized them to make sure things got done.

3.11    In December 2022 Plaintiff's team was left using the new data system on their own, being told by the person that was put in charge of it (he was a contractor at Beckett) that, "The contractor won't be able to help us for some time." At this point, Plaintiff's team created some of their own data endpoints in that system to accomplish both their Beckett needs and milestone needs.

3.12    In December 2022 Plaintiff and his team were working feverishly (60-70 hour weeks) to get their product integrated with the new data system and on the Beckett platform. Plaintiff's team had only been part of Beckett for 90 days, but had already done an amazing amount of work trying to fix things that were Beckett problems.

3.13    In January 2023 Dave LeBlanc, Head of HR and Julie R. called and informed Plaintiff that he was being terminated. This was an extreme shock to Plaintiff and other executives. Plaintiff asked for a reason. They said that they would send Plaintiff an email with reasoning in the termination letter, but no cause was alleged in the letter (**Exhibit 4**, *PApp 29*).

3.14    It is obvious from the January 3, 2023, letter to Beckett CEO Kumal Chopra (**Exhibit 3**, *PApp 27-28*) that in 2023, Defendant Beckett was continuing its reduction in work force, which began on December 11, 2023, when Defendant terminated their entire workforce which had been responsible for their in-house data management system prior to the Noxx

acquisition. Then Defendant decided to continue the reduction in 2022 by scheduling the termination of the entire Noxx data management team, starting with Plaintiff since he was the highest paid at $250,000. **Exhibit 3**, *PApp 27-28* states that the work was being shifted to companies which were affiliates of Defendant in India, where a workforce could be employed at much lower costs. Thus, Plaintiff's terminated had nothing to do with performance because Plaintiff was terminated just because Plaintiff was a member of the Noxx workforce being terminated as part of a reduction in force.

## IV.

## **LEGAL STANDARD**

4.01  Summary Judgment is proper in a case only where there is no genuine issue of material fact Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 106 S.Ct. 2548, 2552, (1986). A Defendant who seeks summary judgment on a Plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Defendant, as movant, cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element. Rather, Defendant must demonstrate an absence of a genuine factual dispute. *Celotex*, 477 U.S. at 327, 106 S. Ct. at 2555. Only if Defendant meets its burden is Plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. To determine whether there is a genuine issue of material fact, the Court must consider the summary judgment proof in a light most favorable to Plaintiff as the non-movant. *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996).

4.02  All reasonable doubts must be resolved against the moving party. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Summary Judgment is improper in this case because there are genuine issues as to all material facts of Plaintiff's claims, as shown by this Response

and Plaintiff's Appendix.

## V.

## ARGUMENT AND AUTHORITIES

**A.    Plaintiff's Objection To The Kevin Isaacson "Affidavit" and Motion to Strike.**

5.01    The keystone of Defendant's Motion for Summary Judgment is the Kevin Isaacson Affidavit attached as Exhibit 1 thereto.

5.02    However, there is no valid notarization to the Isaacson signature, as the Affidavit should be stricken, whereupon the Motion fails, and should be denied.  The notarization attached is by legal counsel, who claims to have "personal knowledge" of the facts, but did not sign the affidavit.

5.03    Thus, the affiant Isaacson signed the Affidavit but did not notarize it while legal counsel notarized the affidavit but did not sign it.  Therefore the affidavit should be stricken.

**B.    Breach of Contract Legal Authorities.**

5.04    Since Defendant asserts in its Motion that Plaintiff cannot prove each element of Plaintiff's contract claim Plaintiff lists the elements as follows:

1.    There is a valid enforceable contract.

2.    The plaintiff is a proper party to bring suit for breach of contract.

3.    The defendant breached the contract.

4.    The defendant's breach caused plaintiff injury.

5.05    The elements are established by the Background Facts and the Exhibits hereto.

5.06     The elements can be found in the following:  *McAllen Hosps., L.P. v. Lopez,*  576 S.W.3d 389, 392 (Tex 2019) (element 1); *Valley Forge, Inc. v. CK Constr., Inc.,* _S.W.3d_, 2023

WL 3395134 (Tex.App.-El Paso 2023, no pet.) (No. 08-22-00084-CV; 5-11-23) (elements 21, 3-5); *Turner v. Ewing,*, 625 S.W.3d 510, 518 (Tex.App-Houston [14th Dist] 2020 pet. denied) (elements 1, 3-5).

### C.    The Defendant Willfully and Intentionally Breached Plaintiff's Contract.

5.03   A key element of the breach of contract which Plaintiff has sued Defendant for is the breach. In this case there is ample evidence to support the intentionality of the breach of contract.

5.04   It is apparent from the Background Facts that management of Defendant Beckett soon realized after acquiring the PlainSpoken System Data Platform which had been designed for use by a military or space contractor for $2,000,000 that the Platform was not suitable for use by Defendant, a baseball card dealer. See Section 3.08

5.05   Defendant acquired Noxx for $20,000,000 in September, 2022, in order to acquire its data platform, without realizing that integrating the PlainSpoken system with the Noxx platform would be a major project since the PlainSpoken System didn't use normal open source data platforms. See Section 3.08

5.06   This major problem of integration led Defendant to make a reduction in workforce in which Defendant terminated its own data management employees on December 11, 2022. See Section 3.10.  At some point during this time period Defendant decided to transfer the integration and data management work to affiliated companies in India, where employment costs are much lower. See **Exhibit 3**, *PApp 27-28*.

5.07   In order to make this transfer Defendant then scheduled a reduction in force of the former Noxx workforce, including Plaintiff. See **Exhibit 3**, *PApp 27-28*. This had nothing to do with Plaintiff's performance, it was just a case of being in the wrong place at the wrong time.

5.08     Therefore, Defendant is liable to Plaintiff for the Severance amount provided for in Section 5(c) of his Agreement, which is $250,000.  See **Exhibit 2**, *PApp 8-26*.

5.09     Defendant's argument that Plaintiff was terminated for cause not only is not provided for in the agreement for the reasons set forth in the Introduction, but also is not supported by the great weight of evidence in this case as set forth in Plaintiff's Declaration which is attached as **Exhibit 1**, *PApp 3-7* hereto.

### D.     Timeline of Case Events.

5.10     Defendant's breach of contract is clear from the following timeline.

| Date | Event |
| --- | --- |
| March 24, 2022 | Plaintiff entered into an Employment Agreement with Defendant. |
| 1/3/2023 | Email from CEO of Defendant, Kunal Chopra stating that Defendant will be "cutting the following people in this order" which includes Plaintiff. |
| 1/8/2023 | Defendant terminated Plaintiff's contract |
| 8/14/2023 | Plaintiff filed suit for breach of contract and payment of contractual severance. |

### E.     Plaintiff's Damages.

5.11     The Employment Agreement (**Exhibit 2**, *PApp 8-26*) provides in Section 5(c) that upon termination of employment without cause prior to conclusion of the Employment Period Plaintiff is entitled to receive a Severance Amount equal to his Base Salary which was $250,000, per annum at the time of his termination.

## VI.

## CONCLUSION AND PRAYER

6.01     For the foregoing reasons, Plaintiff respectfully prays that this Court deny

Defendant's Motio for Summary Judgment, strike Kevin Isaacson's Affidavit, and for such other and further relief, both general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*
_____
W.D. Masterson
State Bar No. 13184000
wdm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, TX  75219
(214) 969-9099 - Telephone
(214) 953-0133 - Facsimile

**ATTORNEYS FOR PLAINTIFF
KRISHNENDU DASGUPTA**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on Defendant's counsel of record via E-File and/or email, on this 1st day of August 2024:

| | |
|---|---|
| Aaron Z. Tobin<br>Condon Tobin Sladek Thornton Nerenberg, PLLC<br>8080 Park Lane, Suite 700<br>Dallas, Texas 75231<br>atobin@condontobin.com | Abigail R.S. Campbell<br>Condon Tobin Sladek Thornton Nerenberg, PLLC<br>8080 Park Lane, Suite 700<br>Dallas, Texas 75231<br>acampbell@condontobin.com |

*W. D. Masterson*
_____
W.D. Masterson